CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED for Roanoke
APR 0 4 2007
JOHN F. CORCORAN, CLERK
BY: Fay Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| WEILY LIU BOKEL, ) | |
| Petitioner, ) | Civil Action No. 7:06CV00639 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| UNITED STATES OF AMERICA, ) | By: Norman K. Moon |
| Respondent. ) | United States District Judge |

Petitioner, Weily Liu Bokel, proceeding pro se, brings this action as a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. Bokel challenges the validity of her sentence of 33 months incarceration followed by a term of one (1) year supervised release, for Attempted International Parental Kidnapping in violation of 18 U.S.C. § 1204(a). Bokel maintains that her counsel provided ineffective assistance and claims prosecutorial misconduct. She requests that her sentence be vacated. Respondent filed a motion to dismiss to which Bokel filed a timely response, making the matter ripe for the court's consideration. The court finds that Bokel's claims lack merit. Accordingly, the court grants Respondent's motion to dismiss.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On February 26, 2004, a federal grand jury in the Western District of Virginia returned a one (1) count indictment against Bokel for unlawfully attempting to remove a child from the United States, with the intent to obstruct the lawful exercise of parental rights in violation of 18 U.S.C. § 1204(a). The Hon. Michael F. Urbanski, United States Magistrate Judge, appointed Mark Wayne Claytor to represent Bokel. On March 3, 2004, Claytor moved the court for a psychological examination of Bokel to determine whether she was competent to stand trial and to assess her mental state at the time of the offense. On May 7, 2004, Bokel was found competent to stand trial.

A jury trial was held from August 9 to August 10, 2004, and the jury ultimately found Bokel

1

guilty. After its verdict, the jury also specifically determined that Bokel's actions were extensive in scope, planning, and preparation. The evidence presented at trial established that Bokel's December 23, 1998 marriage to David Bokel produced one child, Rachel. Subsequent to the Bokels' divorce, the juvenile and domestic relations court ultimately required that all future visitation between Bokel and Rachel be supervised. An order permitting Bokel to have a supervised visit with Rachel on Christmas Eve for three to four hours was also issued at that time. Both parties agreed on a mutual family friend, Judith Black, as the supervisor of that particular visitation. Bokel left the Christmas Eve visitation site with Rachel, rented a car, bought several wigs, contacted a realtor in an attempt to sell her home, and mailed two large packages containing documents, tools, hardware, and CD Roms to her mother in San Paolo, Brazil. Bokel was eventually intercepted at JFK International Airport on December 31, 2003, with two tickets to Hong Kong in the names of Weily Liu and Raezhi Bokel. Bokel had luggage filled with personal and financial documents, diplomas, picture albums, passports, Rachel's school transcripts and immunization records, and $8,000 in cash.

On December 7, 2004, the court sentenced Bokel to 33 months incarceration. In addition, the court sentenced Bokel to one (1) year supervised release. Bokel filed a motion for a new trial pursuant to Fed. R. Civ. P. 33 on March 13, 2006, and it was subsequently denied.

Bokel appealed to the Fourth Circuit Court of Appeals on December 13, 2004, raising two issues: (1) that the District Court erred in making a two-level upward adjustment for obstruction of justice; and (2) that counsel provided ineffective assistance. Based on the subsequent decisions of United States v. Booker, 543 U.S. 220 (2005) and United States v. Hughes, 401 F.3d 540 (4th Cir. 2005), the Fourth Circuit vacated the sentence and remanded the case for re-sentencing because the jury had not been asked to determine if Bokel obstructed justice by committing perjury. The appeals court also found that Bokel's ineffective assistance claim was not properly raised because she did not show

2

conclusively from the face of the record that counsel provided ineffective assistance. On August 14, 2006, Bokel was re-sentenced by the court, without consideration of the obstruction of justice enhancement, to 33 months and one (1) year supervised release.

Bokel collaterally attacks her sentence on several grounds of ineffective assistance of counsel and prosecutorial misconduct. The United States argues that Bokel's entire § 2255 motion should be dismissed because her claims are without merit.[1]

## II. STANDARD OF REVIEW

Before the court will grant a motion to vacate, set aside or correct sentence under § 2255, a petitioner must prove that one of the following occurred: (1) that her sentence was "imposed in violation of the Constitution or laws of the United States"; (2) that "the court was without jurisdiction to impose such a sentence"; or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. In this case, Bokel predicates her claims on the first ground, claiming that her sentence was imposed in violation of the Constitution or laws of the United States. Bokel bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Hall v. United States, 30 F. Supp. 2d 883, 889 (E.D. Va. 1998); Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965).

---

[1] The court in Bousley v. United States, 523 U.S. 614 (1998), held that where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate cause and actual prejudice, or that he is actually innocent. Id. at 622; United States v. Mikalajunas, 186 F.3d 490 (4th Cir. 1999); United States v. Frady, 456 U.S. 152 (1982). Bokel has failed to make this showing as to her prosecutorial misconduct claims, however, as the United States inexplicably fails to raise this affirmative defense, the court will consider the merits of the claims. This standard does not apply to ineffective assistance of counsel claims. See Massaro v. United States, 538 U.S. 500 (2003).

3

## III. ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Bokel claims that she received ineffective assistance of counsel in violation of the Sixth Amendment. Bokel specifically alleges that counsel was deficient in the following respects: (1) failing to raise "mitigating circumstances" and favorable evidence; (2) failing to interview or cross-examine witnesses; (3) failing to maintain communication and establish a trustworthy working relationship with Bokel; (4) confessing to Bokel that he "did not do his job"; and (5) failing to personally visit Bokel[2] and to correct several errors in the pre-sentence report prior to sentencing. Pet'r Mot. Vacate, Set Aside, Correct 5-7 [hereinafter "Pet'r Mot."]. The government contends that all of Bokel's claims are merely generalized allegations that are not supported by facts.

The "benchmark for judging a claim of ineffective assistance of counsel is 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" Jeffers v. Leeke, 835 F.2d 522, 524-25 (4th Cir. 1987) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)). To prevail on an ineffective assistance of counsel claim, a habeas corpus petitioner must satisfy the two-pronged test set forth in Strickland. First, a petitioner must show "that counsel's performance was deficient," meaning that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. "Deficient performance" is not merely below-average performance; rather, counsel's actions must fall below objective standards of reasonableness. Id. When applying the first prong of the Strickland test the petitioner must overcome the strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance" and that the

---

[2] The court will consider this claim as part of the third claim that counsel failed to maintain proper communication with Bokel.

4

challenged action "might be considered sound trial strategy." Id. at 690. Courts must be "highly deferential in scrutinizing counsel's performance." Kratsas v. United States, 102 F. Supp. 2d 320, 322 (D. Md. 2000) (citing Strickland, 466 U.S. at 688-89). Evaluating counsel's conduct in retrospect requires "every effort be made to eliminate the distorting effects of hindsight . . . and to evaluate the conduct from counsel's perspective at the time." Strickland, at 689; see Kimmelman v. Morrison, 477 U.S. 365, 381-82 (1986).

Second, a petitioner must show "that the deficient performance prejudiced the defense" to the extent that he was deprived of a fair trial. Id. The prejudice prong requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. Reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. Most importantly, the burden of proof lies with the petitioner, and petitioner's conclusory statements will not suffice to overcome such a burden. See Moore v. United States, No. 2:05CV24, 2006 WL 167662 (E.D. Va. Jan. 23, 2006) (citing United States v. Turcotte, 405 F.3d 515, 537 (7th Cir. 2005) (holding that "unsubstantiated and largely conclusory statements fall far short of carrying [petitioner's] burden of persuasion as to the two elements of the test outlined in Strickland")); Blackledge v. Allison, 431 U.S. 63, 74 (1977).

This two-part test promulgated by Strickland is also referred to as the "performance" and "prejudice" components. United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999) (citing Fields v. Attorney General of the State of Maryland, 956 F.2d 1290, 1297 (4th Cir. 1992)). The court will first address the prejudice prong of the Strickland test because if Bokel cannot demonstrate the requisite prejudice, the court need not even consider the performance prong. Luchenburg v. Smith, 79 F.3d 388, 391 (4th Cir. 1996) (citing Strickland, 466 U.S. at 697).

Bokel first claims that she was deprived of her Sixth Amendment right to counsel because

5

counsel failed to raise "mitigating circumstances" and "favorable evidence" at trial. Pet'r Mot. 5. Bokel alleges that counsel failed to consider material containing "crucial information" to her defense. Aff. Opp'n. Mot. Dismiss 1. She claims that this information would have proven her version of the events that occurred directly before and during her arrest as set forth in a sworn affidavit prepared for a court in the Eastern District of New York. This court finds that Bokel merely makes broad, vague allegations. She does not identify this "material" or, more importantly, what information or evidence was contained in the material. Generalized allegations and conclusory statements are insufficient to carry the burden imposed by the prejudice prong of Strickland. There was ample evidence to convict Bokel of the charge of International Parental Kidnapping and Bokel provides no factual basis to support her contention that there is a reasonable probability that, but for counsel's failure to use this material, the result of the proceeding would have been different. Accordingly, Bokel has failed to demonstrate ineffective assistance of counsel as to her first claim.

Bokel next contends that counsel failed to interview several witnesses suggested by Bokel and that he failed to object to the admission of and sufficiently cross-examine "unreliable" and "irrelevant" government witnesses. Pet'r Mot. 1-2; Aff. Opp'n. Mot. Dismiss 1-2. Bokel claims that counsel failed to point out to the jury the discrepancies and "irrelevant" testimony of these witnesses and that the prosecution was "manipulating facts to make a case." Aff. Opp'n. Mot. Dismiss 2. Bokel also claims that counsel failed to attempt to "have the case dismissed" or to file a motion for a new trial based on these reasons.[3] Aff. Opp'n. Mot. Dismiss 2. Bokel's second group of claims also fail because

---

[3] Bokel gives no indication that she even requested that counsel make such a motion. Regardless, finding nothing warranting a new trial, the court finds that Bokel was not prejudiced by counsel's failure to file a motion for a new trial. A petitioner cannot succeed on a § 2255 motion by simply making the bare allegation that her attorney should have done more. See McClurge v. U.S., No. 04 C 3628, 2004 WL 2870072, at *8 (N.D. Ill. Dec. 13, 2004) (citing Winters v. Miller, 274 F.3d 1161, 1167 (7th Cir. 2001)) (finding no ineffective assistance when petitioner

6

conclusory statements and mere bald assertions are insufficient to meet the prejudice prong of Strickland. Bokel fails to cite how the testimony of any of the witnesses she claims to have provided to counsel would have aided her defense. In fact, she does not even identify these alleged witnesses or detail the substance of what their testimony would have been at trial. Bokel likewise does not state what witnesses or evidence her attorney should have discovered. See Beaver v. Thompson, 93 F.3d 1186 (4th Cir. 1996) (holding that "a defendant's allegation that his attorney conducted an inadequate investigation does not warrant relief absent a proffer of what favorable testimony the witness or witnesses would have given"). There is no basis, therefore, for the court to conclude that the witnesses would have helped Bokel had they been called as she offers nothing more than speculation that she was prejudiced by the alleged failure to call them. Bokel's claims that her attorney failed to object to or fully cross-examine several government witnesses are equally conclusory.[4] She fails to provide any specific instances of

---

could not demonstrate prejudice, as no issue in his petition would "have resulted in a reversal of the conviction, or an order for a new trial"); United States v. Moran, 393 F.3d 1, 11 (1st Cir. 2004) (holding that, to find prejudice, a defendant must independently demonstrate that an objectively reasonable district court would likely have granted a new trial); Butcher v. United States, 368 F.3d 1290 (11th Cir. 2004). To the extent that Bokel is claiming insufficiency of the evidence, the court notes that a § 2255 motion is not the proper forum for such a claim. Bokel's declaration, attached to her § 2255 motion, essentially consists only of explanations and justifications for her actions. She "maintains her innocence" and "[m]oves this court to overturn [her] sentence for wrongful conviction" because she claims that her trial was "tainted through and through with injustices." Mot. Attach. Decl. 5. An attack on the sufficiency of the evidence is not cognizable under § 2255, however. Sonnier v. United States, 314 F.2d 69, 71 (4th Cir. 1963); Dockery v. United States, 237 F.2d 518 (4th Cir. 1956); Taylor v. United States, 177 F.2d 194, 195 (4th Cir. 1949).

[4] The court notes that Bokel seems to be challenging trial tactics in this instance, not trial preparation. Thus, the court finds that she also fails to overcome the "strong presumption . . . that, under the circumstances, the challenged action might be considered sound trial strategy" as required by the performance prong under Strickland. See Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977) (holding that "[a]bsent a showing that the tactical decision of counsel was so unreasonable in light of the need for the testimony that it amounted to a deprivation of an attorney who acted within 'the range of competence demanded of attorneys in criminal cases,' . . . we are reluctant to second guess the tactics of trial lawyers"); United States v. Brown, No. 93-5835, 1994 WL 649086, at *3 (4th Cir. Nov. 18, 1994). Furthermore, "strategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690.

7

inconsistent testimony or explain how the witnesses were "unreliable" or "irrelevant."[5] Consequently, Bokel's claims cannot be sustained on this basis either.

Bokel further claims that she was denied effective assistance of counsel because counsel failed to maintain communication with her and establish a "trustworthy working relationship." Pet'r Mot. 2. She specifically alleges that she was "unaware of the direction her appeals had taken," and suggests that her appellate claim for sentence reduction was insufficient and that counsel should have appealed on the ground that she was "innocent." Aff. Opp'n. Mot. Dismiss 2. She also maintains that counsel failed to visit her prior to sentencing as promised. Id. Even if the court assumes that counsel's failure to communicate with Bokel constitutes deficient performance, Bokel fails to hurdle the prejudice prong of Strickland. Bokel has failed to show that, but for counsel's failure to raise some unidentified issue(s) as to her innocence and communicate more with her during her direct appeal and sentencing, there is a reasonable probability the outcome of her case would have been different. See McCrae v. Blackburn, 793 F.2d 684 (6th Cir. 1986) (finding that lack of communication between counsel and appellant does not constitute ineffective assistance, without a showing that such resulted in prejudice to the appellant). Thus, Bokel's claims that her appellate counsel failed to appeal on the ground that she was "innocent" and failed to properly communicate with her concerning her appeal and sentencing are factually insufficient and present no potential claim for relief under § 2255.

Bokel also claims that because counsel "confessed" to Bokel at some unknown point in time that he "did not do his job," this proves that she was denied effective assistance of counsel. Pet'r Mot. 2. Even though Bokel commends counsel for this confession, she alleges that his "lack of timely action

---

[5] Even if the court were to consider Bokel's more specific allegations concerning unreliable witnesses in her prosecutorial misconduct claims, her allegations still fail to reach the level of prejudice required under Strickland.

to correct the problems" caused her to "suffer dearly." Aff. Opp'n. Mot. Dismiss 2. Bokel does not indicate how counsel "did not do his job" or to what "problems" she is referring. Once again, Bokel's conclusory allegations lack any factual support and are, thus, insufficient to show prejudice under Strickland. Therefore, the court must deny relief on this ground.

Finally, Bokel asserts that she received ineffective assistance because counsel failed to correct "over forty discrepancies" in the pre-sentence report. Pet'r Mot. 2-3; Aff. Opp'n. Mot. Dismiss 2-3. Conspicuously absent from both Bokel's petition and her response to the motion to dismiss is any detail of the allegedly inaccurate information in the pre-sentence report. In the context of sentencing, the "prejudice which must be shown is that but for counsel's error, defendant's sentence would have been significantly less harsh." United States v. Caldwell, No. 95-70, 1997 WL 230788 (E.D. Pa. Apr. 29, 1997) (citing Spriggs v. Collins, 993 F.2d 85, 88 (5th Cir. 1993)). Bokel fails to show or even allege that her sentence would have been any different even if the alleged discrepancies had been corrected. Furthermore, she fails to reconcile this claim with the fact that counsel filed several objections to the pre-sentence report. Accordingly, the court concludes that Bokel has failed to demonstrate ineffective assistance of counsel as to this claim as well.

Since Bokel has failed to prove the prejudice element of all of her ineffective assistance of counsel claims, this court need not fully address the performance element of the Strickland test in order to find that her assertions lack merit. As Bokel has failed to sustain her burden of proving ineffective assistance of counsel, her claims must be dismissed.

## B. PROSECUTORIAL MISCONDUCT

Bokel next contends that her trial was tainted with prosecutorial misconduct. Specifically, she alleges: (1) that the prosecutor attempted to withhold favorable evidence to the defense that could

have led to an acquittal; (2) that the prosecutor knowingly called unreliable witnesses to testify during the arraignment and trial; (3) that the prosecutor attempted to sway the jury against Bokel by calling her a liar and that this opinion was subjective and not supported by factual evidence; and (4) that the prosecutor petitioned the court to sentence and re-sentence Bokel to a "prolonged sentence" in violation of the Constitution. Pet'r Mot. 5-7. The government contends that all of Bokel's claims are without merit.

The thrust of Bokel's first claim seems to be that the prosecutor withheld exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963).[6] While Bokel fails to allege any evidence that was withheld from the defense by the prosecution, she takes issue with the determination of a Motion in Limine filed by the prosecution. She claims that the motion resulted in the "dismiss[al] of evidence against David Bokel's credibility as a trial witness." Aff. Opp'n. Mot. Dismiss 6. This "evidence" is a police report, filed by Bokel, against David Bokel for entering her house without permission and removing several items. Bokel claims that this "removal of evidence" from her home indicated that David Bokel "had intentions to fabricate incriminating evidence" against her. Aff. Opp'n. Mot. Dismiss 6. At trial, this court determined that the police report was irrelevant and, thus, inadmissible under Fed. R. Evid. 401 and 402. Bokel illogically argues that because of the Motion in Limine, the prosecution was able to "withhold" this "favorable evidence" and that it could have led to Bokel's "acquittal."

In Brady, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of the prosecution." 373 U.S. at 87.

---

[6] Bokel also argues in this claim that the prosecution failed to prove her guilt "beyond a reasonable doubt" because of this alleged withholding of evidence. This claim is without merit, however, as the court has already established that arguing insufficiency of the evidence is not cognizable in a § 2255 claim.

10

Reversal for a Brady violation is required "'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Kyles v. Whitley, 514 U.S. 419, 433-34 (1995) (quoting U.S. v. Bagley, 473 U.S. 667, 682 (1985)). "Thus, 'the question is not whether the defendant would more likely than not have received a different verdict with the [concealed] evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" Smith v. Holtz, 210 F.3d 186, 194 (3d Cir. 2000) (quoting Kyles, 514 U.S. at 434). Of course, even where the government impermissibly withholds exculpatory evidence, a Brady violation does not arise unless the undisclosed evidence was material. Barnes v. Thompson, 58 F.3d 971 (4th Cir. 1995) (citing Bagley, 473 U.S. at 669 (1985); Brady, 373 U.S. at 87 (1963)). Conclusory or "purely speculative" claims of Brady violations are insufficient to obtain collateral relief. See Murphy v. Johnson, 205 F.3d 809, 814 (5th Cir. 2000).

From the information provided by Bokel, the court finds no Brady violation or any other violation of applicable law. Bokel fails to show that the prosecution withheld any evidence at all, much less material evidence. Her claim that the motion in limine concerning the police report was decided incorrectly does not meet the standard for a violation under Brady. Therefore, Bokel's allegations that exculpatory evidence was withheld by the prosecution amount to nothing more than bald assertions and are without merit.

Bokel next claims that the prosecutor knowingly called unreliable witnesses to testify during the arraignment and trial.[7] Bokel specifically claims that Judith Black, the visitation supervisor the night

---

[7] Bokel also alleges in this claim that evidence of the purchased wigs, the testimony of the post office teller concerning the two mailed packages, her heavily packed suitcases, and the real estate agent testimony concerning Bokel's request to sell her home never should have been used and were not sufficient to prove that she was attempting to flee or that she had extensively planned the attempt. Opp'n. Mot. Dismiss 7. Once again, the court notes that insufficiency of the evidence claims are not cognizable in a § 2255 claim.

11

that Bokel left with Rachel, gave four contradictory affidavits under oath prior to trial. Aff. Opp'n. Mot. Dismiss 3. Bokel does not elaborate on these alleged inconsistencies. Bokel also claims that David Bokel was an unreliable witness because he allegedly broke into her home and tampered with the "crime scene" by removing several boxes of household items. Id. at 3. She also accuses Court Appointed Special Advocate ("CASA"), Judith Burnett, of erroneously making the finding that Bokel was a "danger" to Rachel because this finding was in opposition to alleged opinions of unknown medical staff at "PAPD."[8] Id. at 4. Bokel further claims that Guardian Ad Litem, Linda Willis, lied under oath when she testified that petitioner never had custody of Rachel and that Bokel had never attempted to contact her. Id. at 5. Bokel alleges that FBI Agent, Mark McKizer, lied under oath when he stated that she had two one-way airline tickets in her possession when she had, in fact, not picked them up yet. Id. Bokel finally claims that because "PAPD Agent," Jennifer Adams, was "part of the underlying conspiracy to 'trick' petitioner into being arrested," she was also not a reliable witness. Id. Bokel suggests that the prosecution had "access to factual knowledge of all the above discrepancies to the truth" and "opted to ignore them" and instead "fabricated evidence[]" and presented "unreliable witnesses." Id. at 8.

The use of testimony which the prosecution knows, or should know, is perjured or false may constitute prosecutorial misconduct. See Giglio v. United States, 405 U.S. 150, 154 (1972) (finding that evidence which impeaches the testimony of a government witness falls within the Brady rule); Bagley, 473 U.S. at 676. The Fourth Circuit Court of Appeals in McDowell v. Dixon, 858 F.2d 945 (4th Cir. 1988), explained that the Brady doctrine was restated and amplified in United States v. Agurs, 427 U.S. 97 (1976). Agurs acknowledges that Brady applies in several different situations, including where the undisclosed evidence demonstrates that the prosecution's case includes perjured testimony. In those

---

[8] Bokel does not elaborate on this abbreviation.

instances the conviction is "fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Id. at 103 (footnotes omitted). In that event, the Court held that the conviction or the punishment, as the case may be, cannot stand if the suppressed evidence is material. Id. However, the mere existence of discrepancies in testimony where there is no evidence of prosecutorial misconduct and where the fairness of the trial was not materially affected, will not result in reversal of the conviction. See United States v. Griffin, 194 F.3d 808 (7th Cir. 1999) (finding that discrepancies in testimony given by cooperating drug dealers in defendant's first and second trials were mere inconsistencies in testimony that did not establish perjury or government's knowing use of perjured testimony, and thus did not warrant new trial); United States v. Zuno-Arce, 44 F.3d 1420, 1423 (9th Cir. 1995) (finding no evidence of prosecutorial misconduct where discrepancies in testimony could as easily flow from errors in recollection as from lies, and holding that whether witnesses lied or erred in their perceptions or recollections were proper questions for jury).

Bokel's allegations that these witnesses committed "perjury under oath, against established facts" and thus became "unreliable," are insufficient to support a claim under applicable law. Aff. Opp'n. Mot. Dismiss 10. Bokel offers no evidence for her conclusory claims and merely cites to her own affidavits as support. Bokel also does not clearly explain how the outcome of the trial would have been different even if these alleged discrepancies were accurate. Her specific allegations amount to, at most, nothing more than slight discrepancies in the testimony of all of the named witnesses. Bokel seems to ignore the fact that she and counsel had the opportunity to fully cross-examine any witnesses and were free to point out any inconsistencies in their testimony to the jury. The jury weighed the credibility of the witnesses and made its determination. Bokel does not suggest that the prosecution

13

failed to disclose evidence that would demonstrate that any of these witnesses committed perjury. Rather, she claims that the prosecution engaged in misconduct by placing Bokel's credibility at issue simply because her testimony differed from these "unreliable" witnesses. Aff. Opp'n. Mot. Dismiss 5-6. On this record, therefore, there is no basis for finding prosecutorial misconduct nor that the fairness of the trial was materially affected. It is clear that Bokel received a fair trial that resulted in a verdict worthy of confidence. Accordingly, she is not entitled to relief.

Bokel further claims that the prosecutor "attempted to sway the jury against her by calling her a liar" and that "this opinion was subjective and not supported by factual evidence." Pet'r Mot. 6. The prosecutor denies calling Bokel a "liar" but admits that he called her credibility into question during the trial. To establish prosecutorial misconduct, the defendant must show that "the prosecutor's remarks or conduct were improper," and that "such remarks or conduct prejudicially affected his substantial rights so as to deprive him of a fair trial." United States v. Scheetz, 293 F.3d 175, 185 (4th Cir. 2002) (citing United States v. Mitchell, 1 F.3d 235, 240 (4th Cir.1993)). The following factors are relevant in evaluating the issue of prejudice:

> (1) the degree to which the prosecutor's remarks had a tendency to mislead the jury and to prejudice the defendant; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the defendant; (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters; (5) whether the prosecutor's remarks were invited by improper conduct of defense counsel; and (6) whether curative instructions were given to the jury.

Id. (citing United States v. Wilson, 135 F.3d 291, 299 (4th Cir.1998)). In this case, Bokel's claim fails because, even if her allegation is accepted as true, the prosecutor's remarks were not improper and did not prejudice Bokel or deny her a fair trial. The fact that the prosecutor pointed out to the jury that Bokel's version of the relevant events were contradictory to the majority of the evidence is insufficient

14

to establish prosecutorial misconduct. See Portuondo v. Agard, 529 U.S. 61, 87 (2000) (emphasizing that a prosecutor may make an issue of a defendant's credibility). Thus, Bokel is not entitled to relief on this ground.

Finally, Bokel claims that the prosecutor petitioned the court to sentence and re-sentence her to a "prolonged sentence" in violation of the Constitution.[9] Pet'r Mot. 7. Bokel does not elaborate on this claim in any of her filings, however, and offers no support for this contention. There is no basis to conclude that the prosecutor's actions were in violation of the Constitution or any other applicable law. The prosecutor was not unreasonable for requesting a two level increase because United States v. Hughes, 401 F.3d 540 (4th Cir. 2005), had not been decided at the initial sentencing. The prosecutor was also not unreasonable in requesting a sentencing enhancement. A prosecutor is well within his right to move the court to consider sentencing enhancements. Finally, Bokel's sentence was within the appropriate United States Sentencing Commission Guidelines range, thus, the sentence is presumed to be reasonable. See United States v. Green, 436 F.3d 449, 456-57 (4th Cir. 2006) (holding that a sentence which is within the Guidelines range is presumed to be reasonable in the context of the meaning of reasonable in the Booker case). Bokel's assertions that the actions of the prosecutor constituted prosecutorial misconduct are not warranted, therefore, she is not entitled to relief on this final claim.

---

[9] The United States explains that, during the initial sentencing, the prosecutor requested a two (2) level increase in Bokel's offense level for obstruction of justice. The United States Court of Appeals for the Fourth Circuit subsequently decided United States v. Hughes, 401 F.3d 540 (4th Cir. 2005), which determined that plain error exists when a sentencing judge enhances a defendant's sentence based on facts determined by the judge and not found by a jury beyond a reasonable doubt or admitted to by the defendant. Because the jury in Bokel's trial had not been asked to determine if Bokel had "obstructed justice" with her perjured testimony, the case was remanded for re-sentencing. At the re-sentencing, the prosecutor moved for an upward departure based on Bokel's perjury on the ground that the sentencing guidelines had recently been determined to be advisory. See United States v. Booker, 543 U.S. 220 (2005). The court denied the motion, but did sentence Bokel to the high end of the guideline range.

## IV. CONCLUSION

Bokel has not alleged facts that, if true, would entitle her to habeas corpus relief. More specifically, she fails to allege sufficient facts to entitle her to relief on the grounds that she was denied effective assistance of counsel or that the prosecutor engaged in misconduct. Bokel's conclusory and speculative allegations fail to sustain her burden. For the reasons stated herein, the court grants Respondent's motion to dismiss and denies Petitioner's § 2255 motion. Petitioner's request to vacate is also denied.[10]

ENTER: This 4th day of April, 2007.

_____
Hon. Norman K. Moon
United States District Judge

---

[10] Bokel does not request an evidentiary hearing, however, the court notes that an evidentiary hearing must be held to consider claims in a § 2255 motion " '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" 28 U.S.C. § 2255. Thus, a movant is entitled to an evidentiary hearing " 'when the facts alleged, if true, would entitle him to relief.'" Townsend v. Sain, 372 U.S. 293, 312 (1963). A § 2255 movant has the burden of proving the substance of his allegations and a district court is not required to hold an evidentiary hearing on the basis of conclusory allegations. See Poyner v. Murray, 964 F.2d 1404, 1421-22 (4th Cir. 1992); Tucker v. United States, 423 F.2d 655, 656 (6th Cir. 1970); Scott v. United States, 598 F.2d 392, 393 (5th Cir. 1979) (holding that when claims for habeas relief are based on unsupported generalizations, a hearing is not required). As it is apparent that Bokel is not entitled to relief, an evidentiary hearing will not be held.

Case 7:06-cv-00639-NKM-mfu Document 16 Filed 04/04/07 Page 16 of 16 Pageid#: 155